# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

                Plaintiff,      :      Case No. 1:16-cr-115
                                                     Also 1:21-cv-093

                                                   District Judge Susan J. Dlott
-   vs -                                Magistrate Judge Michael R. Merz

RICHARD LEE DeVITO,

                Defendant.      :

## REPORT AND RECOMMENDATIONS

This case is pending on Defendant's Motion under 28 U.S.C. § 2255 to Vacate his conviction and sentence (ECF No. 114). That Motion is ripe for decision after an evidentiary hearing (Transcript, ECF No. 151) and post-hearing briefing (Defendant's Brief at ECF No. 152; (Government Response, ECF No. 155)[1].

---

[1] Neither of these filings is compliant with the Court's record citation rule, S. D. Ohio Civ. R. 7.2(B)(3), because it does not include the required PageID number. Instead, both counsel have used the typescript number from the transcript as furnished to them by the court reporter. That is not a valid excuse for not following a court-ordered citation system. S. D. Ohio Civ. R. 7.2(b)(2) requires citation to Supreme Court decisions to the Official Reports when published and has since before the undersigned was admitted to practice. Do counsel suppose substitution of the Government Printing Office Advance Sheet citation is acceptable? The PageID numbers are as available to counsel as to the Court. Rather than delay a decision, the Court has elected to make the translation itself. Future non-compliant filings will be stricken.

1

**Litigation History**

Defendant was indicted on December 21, 2016, by the grand jury for this District on one count of production of child pornography and one count of possession of child pornography (Indictment, ECF No. 10). DeVito initially retained Attorney Edward Perry and entered a not guilty plea before Magistrate Judge Karen Litkovitz on December 30, 2016 (Minute Entry, ECF No. 15). The case was assigned to District Judge Susan Dlott at the time of indictment. On January 19, 2017, Attorney Mark Jon Wieczorek replaced Mr. Perry and shortly thereafter Judge Dlott granted a joint motion to continue the trial from March to July, 2017 (ECF Nos. 17 & 18). On May 1, 2017, Adam Boyd Bleile replaced Attorney Wieczorek as DeVito's counsel (ECF No. 22). Two weeks later, Judge Dlott allowed William Butler, an attorney from Kentucky, to appear *pro hac vice* as co-counsel (ECF No. 23). Then on November 27, 2017, Messrs. Bleile and Butler withdrew, apparently because DeVito lacked funds to retain them further, and Attorney Candace Crouse, on recommendation of the Federal Defender, was appointed under the Criminal Justice Act (ECF Nos. 39, 41, and 42). Then on April 5, 2018, Sarah Kovoor was retained and replaced Attorney Crouse (ECF No. 48).

On June 19, 2018, DeVito entered into a Plea Agreement with the United States (ECF No. 63) in which he agreed to plea guilty to one count of production of child pornography (¶ 1). He acknowledged that the minimum sentence would be fifteen years and the maximum thirty years (¶ 3(a)). He also waived his right to appeal unless the sentence exceeded the statutory maximum (¶ 10). DeVito pleaded guilty pursuant to the Plea Agreement the same day (Minute Entry, ECF No. 62; Transcript, ECF No. 80).

A week before sentencing Attorney Kovoor attempted to withdraw because of DeVito's refusal to cooperate (ECF No. 87). Judge Dlott denied the motion (ECF No. 88) and proceeded on May 21, 2019, to sentence DeVito to the thirty-year sentence he is now serving (Minute Entry, ECF No. 89; Judgment, ECF No. 90).

Despite his waiver of the right to appeal in the Plea Agreement, DeVito appealed and the Sixth Circuit appointed Attorney Kimberly Penix to represent him (ECF No. 96). Upholding the appeal waiver on the Government's motion, the Sixth Circuit dismissed the appeal. *United States v. DeVito*, Case No. 19-3525 (6th Cir. Nov. 8, 2019)(copy at ECF No. 111). Represented by new counsel, DeVito filed his Motion to Vacate on February 5, 2021, in which he pleads the following claims for relief:

> **Ground One:** Counsel's Pre-Plea Counsel's Pre-Plea Performance Was Constitutionally Ineffective; But For Counsel's Errors, DeVito Would not have pled guilty and would have proceeded to trial.
>
> **Ground Two:** Appellate Counsel Was Ineffective For Failing To Argue The Voluntariness Of DeVito's Guilty Plea In His Opening Brief.

(ECF No. 114). Ground Two has effectively been abandoned; it was not briefed and no testimony was offered in support.

Believing the Motion to Vacate could properly be decided on an expanded paper record, the Magistrate Judge denied Defendant's request for an evidentiary hearing (ECF No. 144), but Judge Dlott reversed that ruling on appeal (ECF No. 146). She noted two bases for the reversal.

First of all, the undersigned had noted the difficulty in conducting an in-person proceeding during the depths of the COVID-19 pandemic, particularly given the serious shortage of United

3

States Marshal personnel (ECF No. 144, PageID 1150-51). Judge Dlott found this difficulty obviated by DeVito's agreement to conduct the hearing remotely (ECF No. 146, PageID 1963).[2]

Secondly, Judge Dlott relied on the traditional preference for live rather than paper testimony.

> DeVito correctly points out that an evidentiary hearing will better allow the Magistrate Judge to assess his credibility than the written record. This could be critical as DeVito contends there is a dispute of fact as to what Attorney Kavoor [sic] told him and what he understood about the application of the Sentencing Guidelines to his misconduct.

(ECF No. 146, PageID 1163).

**Summary of Testimony**

The evidentiary hearing was held May 6, 2022, and the testimony has been transcribed (ECF No. 151). Defendant testified himself, but presented no exhibits or any other live witnesses. He related that he had first been represented by Attorney Zenaida Lockard but eventually came to be represented by Attorney Candace Crouse.[3] She came to the Hamilton County Jail to discuss a proposed plea agreement which included something called "pseudocounts" which were written on a sheet of yellow notebook paper (Transcript, ECF No. 151, PageID 1172-73.) This initial discussion of the plea deal was not very deep and did not last more than forty-five minutes, according to DeVito. *Id.* at PageID 1173.

> Q. [by Attorney Gordon] Now, to your knowledge, did you receive a detailed letter from now Judge Crouse explaining the impact of the pseudocounts?

---

[2] DeVito had not made this offer prior to the appeal.
[3] By the time of the hearing, Ms. Crouse had been elected Judge of the Ohio First District Court of Appeals.

4

>  A. No.
>
>  Q. Did now Judge Crouse hand you a detailed letter at the jail explaining the impact of the pseudocounts on the guidelines?
>
>  A. Detailed, no. Again, I was shown the yellow piece of paper and when she had left the jail I did ask for a copy of it.

(*Id.* at PageID 1174).

DeVito terminated Judge Crouse's representation because he wanted a motion filed to dismiss the production count on a legal basis he had learned of from Attorney William Butler. He eventually hired Attorney Sarah Kovoor who did file that motions and a motion to suppress for violation of *Miranda*. *Id.* at PageID 1178.

On June 19, 2018, DeVito came to Court for what he thought was to be a hearing on his motion to suppress. *Id.* at PageID 1178. He learned when he arrived that if he insisted on going forward with the hearing, the United States would indict him on sufficient superseding counts to ensure life imprisonment. *Id.* He wanted to have a hearing on his motion, but it was made to clear to him that if Judge Dlott took the bench, the previously offered plea agreement would be withdrawn. *Id.* at PageID 1181. Attorney Kovoor did not explains to him, he said, the impact of the pseudocounts. *Id.* Concluding, he testified he believed on June 19, 2018, when he signed the Plea Agreement, he was "signing for one victim over five days." *Id.* at PageID 1185. He asserted Ms. Kovoor never discussed the Sentencing Guidelines with him. *Id.* at PageID 1186. He admits Judge Crouse told him that her Sentencing Guidelines calculation matched the Government's with a number 49. *Id.* at PageID 1189. He admits seeing in Judge Crouse's notes a reference to twenty-five additional victims. *Id.* He understood if they were part of the statement of facts, they would increase his sentence. He tried unsuccessfully to have them removed from the Statement of Facts. *Id.* Indeed he refused several times to sign but eventually gave in. *Id.* at PageID 1191.

His plan at sentencing was to try to get Judge Dlott to sentence him to fifteen years; but even if that had happened he would still have tried to withdraw his guilty plea "Because I didn't agree to plea to that day. The plea agreement had been rescinded and I had asked for a hearing of the motions that I filed in my case and did not receive". *Id.* at PageID 1195.

He admitted none of his attorneys ever recommended going to trial.  The two motions on which he had hoped to have a hearing on the date he eventually pleaded were a motion to suppress for violating *Miranda v. Arizona* and a motion to dismiss the production count.

The United States then called Candace Crouse as a witness.  She had been practicing criminal defense law almost exclusively for more than ten years when she was appointed to represent DeVito in the Fall of 2017.  *Id.* at PageID 1214.  Her standard practice over the hundreds of federal criminal cases she handled was

> once I received a plea offer from the Government, I would try to do my own calculation. I would also ask the prosecutor for what they think their calculation is just to see if we're on the same page. And then occasionally, it kind of depended on the complexity of the case, I would go to the, I had a good relationship with the probation department with some of the probation officers and I would maybe reach out to one of them to kind of go over the calculations as well just to make sure that I'm correct and the Government's correct. And so once I figured them out, I would take the plea offer and my guideline book and my calculations to meet with my client and go over everything.

(Transcript, ECF No. 151, PageID 1215-16).  She did not just drop the plea agreement off at the jail as DeVito had described, but

> I would go over everything. I would go over every last drop of the plea agreement. And I would go over the guidelines, how they worked, you know, starting with the base defense level. I would discuss all of the enhancements. I would show them the grid, criminal history calculation, all of that. So we would go over in

> detail because I knew, you know, during the plea hearing, I would be asked and my client would be asked if we did that.

*Id.*

Turning to Mr. DeVito's case particularly, there had already been a plea offer made by the Government to one production count and a possession count. Mr. Healey was willing when she came on the case to allow a plea to one production count. *Id.* at PageID 1218. Because of the numerous additional victims, Judge Crouse wanted to check her Guideline calculation with Laura Jensen of the U.S. Probation Office.[4] Finding that the Government's calculations accorded with those of Ms. Jensen, she went to discuss the results with Mr. DeVito. *Id.* at PageID 1220. As to DeVito's testimony that she just dropped off her calculation sheet, she responded:

> Gosh, I never do that. I never did that. I always spent, when it was a plea and I had to go over guidelines, I always spent a significant period of time with my clients.
>
> I would go over everything. I would go over every last drop of the plea agreement. And I would go over the guidelines, how they worked, you know, starting with the base defense level. I would discuss all of the enhancements. I would show them the grid, criminal history calculation, all of that. So we would go over in detail because I knew, you know, during the plea hearing, I would be asked and my client would be asked if we did that.

*Id.* at PageID 1221. Having had that discussion, she recommended DeVito accept the Plea Agreement. *Id.*

She confirmed the Government's threat to indict on additional victims if the Plea Agreement were not accepted. Having seen the evidence which would support additional counts, she believed the threat of conviction on additional counts was very credible.

---

[4] Ms. Jensen has since retired.

Judge Crouse then identified and authenticated the Government's exhibits. She identified DeVito as a difficult client, but she believed he understood the Guidelines, although he did not think even the mandatory minimum sentence (15 years) was fair. *Id.* at PageID 1236.

**Arguments of the Parties**

DeVito's argument in his post-hearing brief repeats the claim he has made since filing the Motion to Vacate: the ineffective assistance of trial counsel Sarah Kovoor in failing to explain the Sentencing Guidelines means his guilty plea was not knowing, intelligent, and voluntary (ECF No. 152, PageID 1246, 1252).

The Government's Response is that Judge Crouse should be believed on the level of discussion of the enhancements she had with DeVito. There is no testimony to the effect that Attorney Kovoor told DeVito anything different from Judge Crouse about the Guidelines. Although Attorney Kovoor did not testify at the evidentiary hearing, she was deposed and the parties have treated her deposition testimony as available on the merits. She testified that after taking the case:

> Upon talking to Devito, he provided her with *United States v. Schock* and other material concerning the pseudo-counts which they discussed. (PageID# 1097 & 1104.) She believed "[h]e understood the pseudo-counts. He understood the sentencing guidelines." (PageID# 1106-07.) She also explained how Devito instructed her to try to negotiate the removal of the pseudo-counts from the plea agreement. (PageID# 1081.) In an effort to do so, she explained that "I went back, and Assistant U.S. Attorney Healey said no, there's absolutely no way they would do it, they wouldn't budge. I mean, at that point, I think they had 25 or 29 [victims]." *Id*. After pleading guilty, she stated Devito was not shocked or surprised when the initial guideline report was provided by probation. (PageID# 1121.) She stated that Devito went into the sentencing "with the hope that

8

> he would get 15 to 20 years." (PageID# 1084.) Further, when asked about DeVito's assertions regarding the pseudo-counts she stated "[DeVito] is so well read, thorough, intelligent, to wait four years now to allege that I didn't tell him about the pseudo-counts, I find really disingenuous, I find it shocking. Because this guy would have said it right away." (PageID# 1085.)

(ECF No. 155, PageID 1261).  Ultimately the Government argues DeVito pleaded guilty not because of any lack of information about the Guidelines, but because neither he nor his counsel could convince the Government to remove the pseudocounts.

## Analysis

## Governing Standard

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

9

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the

> outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

On the evidence adduced, the Magistrate Judge recommends the Court adopt the following findings of fact and conclusions of law.

Richard DeVito is a college graduate in psychology from the University of Cincinnati. This case represents his first conviction for a crime of any degree. Consistent with society's strong disapproval of child sexual abuse, it is not surprising that Congress has attached very severe penalties to not only engaging in such behavior, but creating visual images of it.

DeVito had a number of appointed or retained counsel in the case. All of them advised him against taking the case to trial even on the indictment as initially returned by the grand jury, apparently because the Government possessed strong physical evidence. With the case in that posture, the only viable strategy was to negotiate the best possible plea agreement and argue strongly in mitigation. This is the strategy Judge Crouse adopted. When she took over the representation, DeVito was charged with one production count and one possession count and she was able to negotiate down to the one production count.

11

However, the Sentencing Guidelines would require the Court to consider that there were twenty-five more victims beyond the indictment, although the relevant Guideline capped that consideration at five additional victims. DeVito understood that: at one point he attempted to negotiate directly with AUSA Healey to take the extra names out, but Healey would not agree and DeVito went ahead with the guilty plea nonetheless (ECF No. 155, PageID 1259, quoting transcript).

Viewing the evidence as a whole, the Court should conclude DeVito accepted the Plea Agreement because it was the best deal he could get and not because he did not understand the impact of the Sentencing Guidelines. If he did not accept it when he did (i.e., on the date set for the suppression hearing), the Government was prepared to rescind the offer and seek a superseding indictment on more production counts on which it had good evidence. DeVito testified he felt pressured, but the pressure arose from his objective circumstances and not from any overreaching by the Government.

DeVito's claims about not being informed of or understanding the effect of the pseudocounts are not credible. Judge Crouse gave a detailed account of her standard practice in defending federal criminal cases for more than ten years before her elevation to the bench; she specifically recounted what she did in this case. DeVito pled pursuant to the same Plea Agreement Judge Crouse had negotiated. The importance DeVito was led to attribute to the pseudocounts is attested by his comment that he spent many hours studying them himself and by the fact, confirmed by his testimony at the evidentiary hearing, that he tried to negotiate directly with AUSA Healey to get them removed.

The whole tenor of DeVito's testimony shows the wisdom of deciding witness credibility on the basis of spoken words. DeVito was continually evasive, often having to be called back to

answer the precise questions put by the examiner. Although it was he who insisted on a live hearing, the result did not enhance his credibility in the Magistrate Judge's ears.

Because DeVito's testimony about what Attorneys Crouse and Kovoor told him about the Sentencing Guidelines is not credible, he has not established the deficient performance prong of the *Strickland* test.

**Effect of Plea Colloquy**

Entirely apart from evaluation of the DeVito's interaction with attorneys Crouse and Kovoor, his Rule 11 plea colloquy with the Court defeats his § 2255 Motion. He assured Judge Dlott that he understood the Plea Agreement and that it was the only source of promises made to him to induce the plea. He acknowledged the threat of superseding indictments, but averred that there were no other threats (Transcript of Plea, ECF No. 80, PageID 268). Having conducted the plea colloquy, Judge Dlott found:

> [T]he defendant is fully competent and capable of entering an informed plea; the defendant is aware of the nature of the charges and the consequences of his plea, is aware of all plea negotiations undertaken on his behalf, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted, and the defendant is now adjudged guilty of that offense.

*Id.* at PageID 273-74. Even assuming Attorney Kovoor conveyed misinformation or none at all about the pseudocounts, the properly-conducted plea colloquy forecloses any finding of prejudice, the second prong of the *Strickland* test.

When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea. It thus forecloses any prejudice. *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017), citing *Ewing v. United States*, 651 Fed.Appx. 405, 410 (6th Cir. 2016) (citing *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)). The court's proper advisement of rights is thus deemed to "foreclose" any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry. *Id*. Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood. *Ramos*, 170 F.3d at 566.

**Conclusion**

DeVito has established neither the deficient performance nor the prejudice prong of the *Strickland* test. It is therefore respectfully recommended that his Motion to Vacate under 28 U.S.C. § 2255 be denied. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond

to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

August 1, 2022.

s/ *Michael R. Merz*  
United States Magistrate Judge